SEAN KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
CRAIG A. HARBAUGH (No. 194309)
Deputy Federal Public Defender
(E-mail: Craig_Harbaugh@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-7865
Facsimile (213) 894-0081

Attorneys for Defendant
ADAM GARDENHIRE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 12-345-SVW |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S OBJECTION TO THE PRESENTENCE REPORT AND SENTENCING POSITION; EXHIBITS |
| v. | ) | |
| ADAM GARDENHIRE | ) | |
| Defendant. | ) | Date: February 25, 2013 |
| | ) | Time: 11:00 a.m. |

Defendant Adam Gardenhire, through his attorney of record, Deputy Federal Public Defender Craig A. Harbaugh, hereby submits his objection to the presentence report and his position regarding factors relevant to sentencing.

DATED:  February 11, 2013                    Respectfully submitted,

                                                          SEAN K. KENNEDY
                                                          Federal Public Defender

                                                          By  /s/ Craig A. Harbaugh
                                                          CRAIG A. HARBAUGH
                                                          Deputy Federal Public Defender

# I.  INTRODUCTION

As is all too often the case with teenagers, Adam Gardenhire exercised poor judgment.  After borrowing a laser pointer from a friend, Gardenhire flashed the laser light into the air, hitting a local private jet and a Pasadena police helicopter.  Almost immediately after, Gardenhire owned up to his conduct and turned over the pointer.  Based upon Gardenhire's actions, the Los Angeles District Attorney's Office chose to charge him with only misdemeanor offenses.  Despite the absence of any overriding federal interest, however, the United States Attorney's Office simultaneously charged Gardenhire with a felony under the newly enacted federal laser statute.  Nevertheless, the Government proposed having Gardenhire participate in a diversion program.

Now the Government seeks to have Gardenhire serve a full year in custody.  But the Government's request, like the U.S. Probation Office's sentence recommendation, rests upon a misapplication of the federal sentencing guidelines.  Because the Government has failed to demonstrate by clear and convincing evidence that Gardenhire acted recklessly, the enhancement under U.S.S.G. 2A5.2(a)(2) does not apply.  Accordingly, Gardenhire's offense level is no higher than 7 with a corresponding sentence range of 0 to 6 months.

Gardenhire has already paid a hefty toll for his poor judgment:  arrest, detention, and now a conviction for a federal felony.  A sentence of probation is not only contemplated for this type of offense under the guidelines, it is an appropriate sentence based upon circumstances of this case.  Gardenhire, who was just eighteen at the time of the offense, does not require a period of incarceration to learn his lesson.  Gardenhire has already started to turn his life around by obtaining steady employment and working toward obtaining his high school diploma.  At most, the Court should order Gardenhire to complete community service.

/ /

## II.  OBJECTION TO PRESENTENCE REPORT

**Assuming *Arguendo* U.S.S.G., 2A5.2 Governs Gardenhire's Offense, the**

**Government Has Failed to Prove By Clear and Convincing Evidence That**

**Gardenhire Acted**

The United States Probation Office calculated the offense level for Gardenhire's offenses at 18.  First, the USPO applied guideline Section 2A5.2, which sets a base offense level of 9.  Second, the USPO applied the recklessness enhancement under 2A5.2(a)(2)(A), which increased Gardenhire's based offense level two fold.  Even assuming 2A5.2 is the correct guideline, the Government has failed to prove that Gardenhire acted recklessly by clear and convincing evidence.  Accordingly, the enhancement does not apply.

There is no specific guideline that governs Gardenhire's conviction under 18 U.S.C. § 39A (2013).[1]  Under these circumstances, the Court should "apply the most analogous offense guideline" or "[i]f there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control . . ."  U.S.S.G. § 2X5.2.  Here, the USPO and Government have settled on Section 2A5.2, which covers "Interference with Flight Crew Member or Flight Attendant" and "Interference with Dispatch, Navigation, Operation, or Maintenance of Mass Transportation Vehicle."  While both address aviation-related offenses, 2A5.2 is directed at more egregious conduct than a 39A offense.  Guideline 2A5.2 covers "terrorist attacks or other violence" directed at mass transportation, 18 U.S. § 1992, assault or intimidation of a flight crew member or airport security personnel, 49 U.S.C. §§ 46503 & 46504, and using a light or signal

---

[1]The statute was enacted in February 2012 but the United States Sentencing Commission did not amend the guidelines to designate a guideline to address an offense under 18 U.S.C. § 39A prior to the issuance of the revised guidelines in November 2012.

1    "with intent to interfere with air navigation."  49 U.S.C. § 46308.[2]

2    But even if Section 2A5.2 applies, it is clear that the recklessness enhancement

3    does not.  Subsection 2A5.2(a)(2) imposes a nine-level increase where the defendant

4    "recklessly endanger[ed] the safety of an aircraft."  To satisfy the heightened *mens*

5    *rea* of recklessness, "(a) the defendant must be aware of the risk created by his

6    conduct and (b) the risk was of such a nature and degree that to disregard that risk

7    constituted a gross deviation from the standard of care that a reasonable person would

8    exercise in such a situation."  U.S.S.G. § 2A1.4, app. note 1; *see United States v.*

9    *Naghani*, 361 F.3d 1255, 1263 (9th Cir. 2004) (applying recklessness definition from

10   Section 2A1.4 in the absence of a definition under 2A5.2).  The Government bears the

11   burden of proving recklessness by clear and convincing evidence.  *United States v.*

12   *Gonzalez*, 492 F.3d 1031, 1039 (9th Cir. 2007).  "Clear and convincing evidence

13   creates a conviction that the factual contention is "highly probable."  *United States v.*

14   *Yi*, No. 11-50234, 2013 U.S. App. LEXIS 25 (9th Cir. Jan. 2, 2013) (quoting

15   *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247

16   (1984)).

17   

18   In this case, the Government failed to satisfy the rigorous clear and convincing

19   standard to prove that Gardenhire acted with recklessness.  First, it is not clear that a

20   reasonable person would be aware of the risk associated with shining a laser at aircraft

21   and would necessarily refrain from doing so.  Laser pointers are relatively compact,

22   often no larger than a pen, and have many ordinary uses.  In recent years, there has

23   been a substantial increase in the availability of relatively inexpensive lasers that

24   exceed federal wattage limits.  Exhibit A (Article, Christine Negroni, *Lasers Rise as*

25   *Threat to Retinas*, N.Y. TIMES (Feb. 28, 2011).  The Federal Aviation Administration

26   

27   

28   ────────────────
     [2]Section 46308 also prohibits maintaining a misleading signal after receiving a
     warning and "knowingly" tampering with a signal.

did not become actively involved with tracking laser pointing incidents until 2005, and the public has only recently become aware of the serious hazards associated with lasers. Most individuals would reasonably believe that given the tremendous distance, even if the laser reaches the cockpit, it would constitute more of a nuisance than a safety hazard.

Teenagers are particularly oblivious to the dangers. Negroni, *supra* ("[E]ye doctors around the world are warning that recent cases of teenagers who suffered eye damage while playing with high-powered green laser pointers are likely to be just the first of many."). Generally, the law holds that minors should not be held to the same standard as adults but only to "the standard of care of a reasonable person of the same 'age, intelligence and experience under like circumstances.'" *J.R. v. State*, 62 P.3d 114, 115 (Alaska Ct. App. 2003) (quoting Restatement (Second) of Torts § 283A (1965)). Teenagers are held to a lesser standard because they often fail to appreciate the risks involved and, thus, are more prone than adults to make bad decisions. L.P. Spear, *The Adolescent Brain and Age-Related Behavioral Manifestations*, 24 NEUROSCIENCE & BIOBEHAV. REVS. 417, 421 (2000) (concluding that teenagers "exhibit a disproportionate amount of reckless behavior, sensation seeking and risk taking" compared to adults and finding "it is statistically aberrant to refrain from such [risk-taking] behavior during adolescence."). Although Gardenhire had technically reached majority age at the time of the incident, the Court should consider his relative immaturity to determine that he a reasonable person in his situation would not be conscious of the risk.

Second, the evidence does not demonstrate that Gardenhire himself was aware of the risk at the time. Gardenhire did not own a laser pointer and had only borrowed one just days before the incident. He had received no warning that the pointer was dangerous to pilots. Gardenhire had never been involved with any previous laser

5

incidents.  Finally, although Gardenhire fully cooperated with law enforcement, including admitted his involvement, he denied being aware of the risks of shining the laser.  As Gardenhire explained, "he didn't think about the dangers of what he was doing . . . [He] was just bored."  Ex. B (Statement of Adam Gardenhire).

Consequently, because the recklessness enhancement does not apply, the base offense level is, at most, 9.  After applying a two-level reduction for acceptance of responsibility, Gardenhire's adjusted offense level is 7.  Based upon a criminal history category of I, the sentencing range is zero to six months, which commonly results in a probationary sentence.  *See* U.S.S.G. § 5B1.1 (noting that sentence calculations falling in Zone A authorize a probationary sentence).

## III.

## SENTENCING POSITION

In exercising its sentencing discretion, the Court must consider the statutory sentencing factors set forth in 18 U.S.C. § 3553, including, among other factors, the nature and circumstances of the offense; the history and characteristics of the offender; the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence; the applicable sentencing range under the advisory sentencing guidelines; and the need to avoid unwarranted sentencing disparity.  18 U.S.C. § 3553(a); *United States v. Booker*, 125 S.Ct. 738 (2005).  While the advisory guidelines are a part of the Court's inquiry, the Ninth Circuit has held that they are but one of many factors that the Court must consider in fashioning a sentence that is sentence "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing.  18 U.S.C. § 3553(a).

/ / /

/ / /

/ / /

**A.  Nature and Circumstances of the Offense**

With the benefit of hindsight, Gardenhire does not dispute the serious risk resulting from his conduct.  However, based upon the positions previously taken by both the Los Angeles County District Attorney's Office and the United States Attorney's Office, Gardenhire's actions are not as egregious as the Government now suggests.

Following the incident, Gardenhire was arrested by Burbank and Glendale police officers and initially charged in state court.  Although California's laser-pointer offense can be charged as either a misdemeanor or felony, Cal. Pen Code § 247.5, the LADA decided to charge Gardenhire with only misdemeanor offenses.  *See* Ex. C (docket).[3]  The state prosecution was later dismissed in favor of the federal prosecution despite any compelling federal interest.  Neither aircraft (a small private jet and a Pasadena Police Department helicopter) involved in the laser incidents were traveling in interstate commerce.  And there is nothing to indicate that the incidents had the potential to interfere with other aircraft.

Even though the USAO chose to take over Gardenhire's prosecution, the Government quickly proposed placing him in the Conviction And Sentence Alternatives (CASA) program.  Gardenhire was ultimately approved for the "Track One" CASA program by U.S. Pretrial Services, which upon completion, would allow Gardenhire to avoid a felony conviction.  Given that the Government's prior willingness to resolve the case with such a lenient outcome, its current request for a full year in custody is as perplexing as it is disheartening.[4]

---

[3]Gardenhire was also charged under Cal. Penal Code 248 which only authorizes a misdemeanor conviction.

[4]No doubt the Government will contend that its volte-face is based, at least in part, upon alleged infractions that occurred while Gardenhire was on pretrial release. The more serious allegation, cocaine use, resulted from Gardenhire smoking a cigarette at party unaware that it had been laced with cocaine.

1

**B.   History and Characteristics of the Offender**

2

Adam Gardenhire has been a responsible young man despite the difficulty of

3

being raised without ever knowing his father.  He has helped care for his four younger

4

siblings, volunteered at his church, and secured employment while focusing on

5

obtaining his high school diploma.  At just nineteen years old, Gardenhire does not

6

require any period of incarceration.

7

As Gardenhire's family and friends can attest, his actions are completely "out

8

of character for him."  Ex. D (Letter of Steve Helmace) ("From our experience over

9

the years with Adam, what he has done is totally out of character for him.").

10

According to Sandy Badgley, Gardenhire has "never done anything as careless,

11

irresponsible and immature. . . . He is always so thoughtful, respectful, has a good

12

head on his shoulders and has good intentions."  Ex. E (Letter of Sandy Badgley).

13

Mark Graves holds a similar view, considering Gardenhire "to be kind, caring and

14

trustworthy" and believes that his actions were the result "boredom and not because

15

he intended to hurt anyone or for some malicious reason."  Ex. F (Letter of Mark

16

Graves).  Scott Silva, who has known Gardenhire since childhood, also confirms that

17

"what happened to him that evening . . . certainly was not characteristic of his normal

18

behavior or of him as an individual."  Ex. G (Letter of Scott Silva).

19

In addition to caring for his four younger siblings, Gardenhire has been active

20

in the community.  Most notably, he volunteered at the Valley Presbyterian Hospital.

21

Ex. H (Letter of Mary Gardenhire).  Gardenhire is currently employed working the

22

night shift. *Id.*

23

**C.   Respect for the Law, Just Punishment, and Deterrence**

24

The remaining sentencing factors caution against any period of confinement.

25

Gardenhire has expressed true remorse for his actions and is not likely to repeat this

26

or similar behavior.  *See* Exs. C, D & E.  As Gardenhire explains:

27

28

8

> The night this happened I had the laser and I eventually decided to point it in the sky. I feel horrible about this. I understand what I have done and it was the biggest mistake of my life. I regret what I have done. I do apologize for my actions and I would like to say sorry to the pilots and anyone else I have caused any inconvenience to.

Ex. H (Letter of Adam Gardenhire). Any need to promote respect for the law or to deter him in the future is satisfied by Gardenhire receiving a federal felony conviction. Absent a presidential pardon, which are exceedingly rare, Gardenhire will suffer a felony conviction for the remainder of his life. He will never have the opportunity to vote, serve on a jury, or possess a firearm to defend himself at home. This does not even take into account the adverse societal consequences, including the difficult prospects of obtaining meaningful employment as well as the general stigma from being a convicted felon.

To the extent that the Court believes more is required to create general deterrence, this need can be addressed through community service. Through counsel, Gardenhire has been actively exploring opportunities to develop or participate in laser safety awareness program where he can speak to high school students about his experience. In the event such program cannot be established, the Court could direct Gardenhire to participate in other community service programs to reinforce the seriousness of the offense.

## IV.

## CONCLUSION

For the foregoing reasons, Gardenhire respectfully requests that the Court sentence him to no more than probation with community service.

DATED:   February 11, 2013            Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

By  */s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Deputy Federal Public Defender

1

<u>PROOF OF SERVICE</u>

2

I, the undersigned, declare that I am a resident or employed in Los Angeles

3

County, California; that my business address is the Office of the Federal Public

4

Defender, 321 East 2nd Street, Los Angeles, California 90012-4202; that I am over

5

the age of eighteen years; that I am not a party to the above-entitled action; that I am

6

employed by the Federal Public Defender for the Central District of California, who is

7

a member of the Bar of the United States District Court for the Central District of

8

California, and at whose direction I served a copy of the:

9

**Defendant's Position Re: Sentencing; Exhibits**

10

On February 11, 2013,  following ordinary business practice, service was:

11

| [X] Placed in a closed envelope, for collection and hand-delivery by our internal staff, addressed as follows: | [   ] By hand-delivery  addressed as follows: | [] Placed in a sealed envelope for collection and mailing  via United States Mail, addressed as follows: |
|---|---|---|

12

13

14

15

[] By facsimile as follows:

16

Melissa E. Mills
United States Probation Officer
312 North Spring Street
Los Angeles, CA 90012-4708

17

18

This proof of service is executed at Los Angeles, California, on February 11,

19

2013.

20

I declare under penalty of perjury that the foregoing is true and correct to the

21

best of my knowledge.

22

23

24

_Rosalinda Lozano_
Rosalinda Lozano

25

26

27

28

10