ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
MELISSA MILLS (Cal. State Bar No.: 248529)
Assistant United States Attorney
National Security Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0627
    Facsimile: (213) 894-6436
    E-mail: Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. 12-345-SVW |
|---|---|
| Plaintiff, | ) **GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION** |
| v. | ) |
| ADAM GARDENHIRE, | ) |
| Defendant. | ) |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its supplemental sentencing position relating to defendant Adam Gardenhire.

///
///
///

The government's supplemental position regarding sentencing and the PSR is based upon the attached memorandum of points and authorities, the attached declaration and the exhibits thereto, the files and records in this case, the Pre-Sentence Investigation Report, and any other evidence or argument that the Court may consider at the time of sentencing.

DATED: February 25, 2013         Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

_____
MELISSA MILLS
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BACKGROUND

On March 29, 2012, defendant was charged in a two-count indictment with aiming a laser pointer at an aircraft, in violation of 18 U.S.C. § 39A. On October 29, 2012, pursuant to a plea agreement, defendant entered a plea of guilty to count one of the indictment. Defendant reserved the right to appeal the Court's denial of his motion to suppress statements and evidence.

On December 21, 2012, the United States Probation Office ("USPO") issued a Pre-Sentence Investigation Report ("PSR") and a separate sentencing-recommendation letter in this matter. The USPO applied USSG § 2A5.2(a)(2)(A), which governs interference with navigation or operation of a mass transportation vehicle in a manner that recklessly endangers the safety of an aircraft, and found a base offense level of 18. (PSR ¶¶ 18-20.) On February 8, 2013, the government filed a sentencing memorandum concurring with this analysis. On February 14, 2013, defendant filed a sentencing memorandum and objection to the PSR arguing that the government had not proven that defendant's behavior was reckless, and that a base offense level of 9 should apply. On February 19, 2013, the USPO filed an addendum to the PSR acknowledging defendant's objection but finding that the evidence showed that defendant's behavior was in fact reckless, and thus that the base offense level of 18 applied.

On February 25, 2013, the parties appeared for a sentencing hearing, where the Court raised the possibility that an evidentiary hearing might be necessary to determine whether

defendant had acted recklessly and directed the government to provide more information as to the precise locations of the laser strikes.

## II.

### SUMMARY OF FACTS

On March 29, 2012, defendant used a green laser pointer to intentionally target two aircraft in flight. The pilot of the first aircraft, a small Cessna jet[1], reported that when he was flying eastbound very low (200 to 300 feet above ground) and on final approach to the runway at Burbank Airport, he was hit in the face by a bright green light. (Exhibits B, C, D.) The pilot was seated on the right-hand side of the cockpit. (Exhibit B.)

After that initial strike, he looked out his right-hand window and saw a green laser beam coming from the south, to the right of the aircraft. Id. The pilot observed that this beam "swept over the aircraft from left to right and then struck [his] right eye." Id. This strike caused the pilot to be "momentarily blinded" as he made his final approach to the runway. (Exhibit C.) At the time that it struck the pilot's eye, the light stayed with the moving plane for about one second. (Exhibit D.) The pilot described the light as "pretty powerful, like a bright light at a rock concert." (Exhibit C.) Only the pilot and the captain of the plane were on board; there were no passengers or other crew members. (Exhibit C.) The captain, who was seated on the left-hand side of the cockpit and who had his head down while working with the instrument panel, did not experience the laser

---

[1] For photographs of the aircraft, see Exhibit A.

strike. (Exhibit E.)

The pilots of the second aircraft, a police helicopter that had deployed to determine the origin of the laser, experienced six laser strikes from the location where defendant ultimately surrendered the laser and admitted using it to intentionally strike multiple aircraft. (Exhibit B.) The pilots reported that the laser was actively tracking the aircraft, and that during each of the six laser strikes, the beam stayed with the aircraft for between three and ten seconds, moving with the helicopter as it flew. Id. Defendant targeted this aircraft as it flew at an altitude of between 400 and 500 feet above ground level. Id. The police pilots were both wearing protective eye gear and thus did not suffer eye damage or vision impairment from the laser. Id.

Upon confessing, defendant told agents with the Federal Bureau of Investigation ("FBI") that he had been warned by the friend who had loaned him the laser "not to shine the laser at anyone's eyes because it would blind people." See Exhibit B to Defendant' Objection to PSR. Defendant further stated that he had used the laser the previous day, shining it at "parked cars, stop signs, and other things in the neighborhood." Id. Defendant also commented that he "was impressed with the laser because the beam went very far." Id.

### III.

**THE EVIDENCE ESTABLISHES THAT DEFENDANT'S CONDUCT WAS RECKLESS**

Defendant acted recklessly in targeting two very low-flying aircraft with a powerful green laser that he admittedly knew to be capable of blinding people. First, the evidence shows that

defendant "was aware of the risk created by his conduct." USSG § 2A1.4 n. 1; held applicable by <u>United States v. Naghani</u>, 361 F.3d 1255, 1263 (9th Cir. 2004). And second, the evidence establishes that the known risk - namely, that by repeatedly shining the beam of a powerful laser into the cockpits of multiple aircraft at low altitudes, he could blind or disorient the pilots - "was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." <u>Id.</u>

Defendant used his laser to hit the pilot of the Cessna airplane directly in his face; he then swept the laser beam over the entire length of the small plane and ultimately back into the cockpit window, where it struck the pilot in the eye and caused eye damage. At that time, the airplane was flying at an altitude between 200 and 300 feet. Defendant had previously used this same laser to strike objects down the street and around the neighborhood, and he had been impressed by how powerful the beam was and how far it could travel. Surely he knew even before the first strike that this same laser could shine 200-300 feet up in the air and strike an airplane, which was of course the entire purpose of his action.[2] <u>See</u> Ninth Circuit Model Jury Instruction 5.6 (July 2010 Ed.), "defendant's words, acts, or omissions, along with all the other evidence" may be considered in determining his knowledge. In any event, the fact that the laser beam could indeed travel a mere 200 to 300 feet was confirmed for

---

[2] Common sense suggests that the defendant was also aware that both aircraft were piloted by human beings, and that unimpaired sight is an important asset for safely flying and landing an aircraft.

defendant when he actually did strike the plane with the beam at least twice - not by mere accident, but by hitting the cockpit once and then methodically sweeping over the airplane's body before again reaching the pilot in the cockpit.

Armed with this confirmed knowledge that he could in fact reach a low-flying aircraft with his laser, defendant next elected to turn the laser on the helicopter that showed up a few minutes later. The evidence of defendant's intentional tracking of the helicopter again clearly establishes that he recklessly endangered the safety of both aircraft. The statements of both helicopter pilots confirm that defendant's targeting of the aircraft was deliberate, and that he struck the cockpit of the helicopter[3] six separate times, each time staying with the aircraft for a full three to ten seconds as it moved through the air. Like the plane that defendant had just hit, this aircraft was flying at a very low altitude - in this case, between 400 and 500 feet above the ground.

Taken together, the evidence from the pilots and from defendant himself supports a finding that defendant was aware of the risk created by his conduct: the risk that his laser could blind or disorient a pilot while in flight and could cause an

---

[3]During the initial sentencing hearing, the Court inquired whether the laser was aimed at the cockpit or at other parts of the aircraft. Because both aircraft were occupied only by persons in the cockpit, no evidence exists as to how often any other parts of the aircraft may have also been struck. The pilots reported only the strikes that they personally experienced, namely, those that they observed from within the cockpit. The total of eight direct hits on the cockpits of the two aircraft (two to the plane, and six to the helicopter) strongly support a conclusion that defendant struck the cockpits recklessly, if not intentionally.

7

aircraft to crash. Moreover, defendant's acceptance of this serious risk because he wished to entertain himself by shining a laser at airplanes "constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." USSG § 2A1.4 n. 1; <u>Naghani</u>, 361 F.3d at 1263.[4]

Defendant now argues that because he disregarded the obvious risks inherent in targeting low-flying aircraft with a powerful green laser that he knew to be capable of blinding people, he should not be held accountable for taking those risks. Contrary to defendant's assertion (see Defendant's Objection to PSR at page 6, line 2), telling the FBI that he "didn't think about the dangers" does not mean that he was not aware of those dangers and legally responsible for their consequences. One can imagine a drunk driver making the same excuse - that he just "didn't think about the dangers" of getting behind the wheel in an impaired state. But disregarding a clear risk does not absolve one of responsibility for assuming it.

///
///
///

---

[4] In <u>Naghani</u>, the Ninth Circuit upheld a finding by the district court that the defendant was aware of the risk created on board an aircraft by smoking in the lavatory, "obstreperous behavior," and threats, and that such conduct constituted a gross deviation from a standard of ordinary care. 361 F.3d at 1263.

## IV.

## CONCLUSION

For the reasons set forth herein and in its previous briefing, the government respectfully submits that USSG § 2A5.2(a)(2)(A) should apply, resulting in a base offense level of 18, and a total offense level of 15.

DATED: February 25, 2013          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division



_____
MELISSA MILLS
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

## DECLARATION OF MELISSA MILLS

I, MELISSA MILLS, declare as follows:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California. I represent the United States in the matter of <u>United States v. Adam Gardenhire</u>, No. CR 12-345-SVW.

2. Attached hereto as Exhibit A is a copy of three pages of photographs depicting the Cessna airplane (in daylight conditions and on the ground) that defendant has admitted to striking with a laser while it was in flight.

3. Attached hereto as Exhibit B is a redacted copy of relevant portions of a Los Angeles Police Department ("LAPD") report detailing the incidents to which defendant has admitted.

4. Attached hereto as Exhibit C is a redacted copy of a Federal Bureau of Investigation ("FBI") report detailing aspects of the incidents to which defendant has admitted.

5. Attached hereto as Exhibit D is a redacted copy of an LAPD report detailing aspects of the incidents to which defendant has admitted.

6. Attached hereto as Exhibit E is a redacted copy of an FBI report detailing aspects of the incidents to which defendant has admitted.

///
///
///

7.  The material in Exhibits A-E was previously provided to the defense in discovery at the commencement of this case.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge. Executed this 25th day of February, 2013, in Los Angeles, California.

```
                         _____
                         MELISSA MILLS
                         Assistant United States Attorney
```