SEAN KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
CRAIG A. HARBAUGH (No. 194309)
Deputy Federal Public Defender
(E-mail: Craig_Harbaugh@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-7865
Facsimile (213) 894-0081

Attorneys for Defendant
ADAM GARDENHIRE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>ADAM GARDENHIRE<br><br>                    Defendant. | CR 12-345-SVW<br><br>DEFENDANT'S SUPPLEMENTAL SENTENCING PLEADING; EXHIBITS<br><br>Date:  February 28, 2013<br><br>Time:  1:00 p.m. |

Defendant Adam Gardenhire, through his attorney of record, Deputy Federal Public Defender Craig A. Harbaugh, hereby submits his objection to the presentence report and his position regarding factors relevant to sentencing.


DATED:   February 27, 2013          Respectfully submitted,


                                    SEAN K. KENNEDY
                                    Federal Public Defender

                                    By  /s/ Craig A. Harbaugh
                                    CRAIG A. HARBAUGH
                                    Deputy Federal Public Defender

## INTRODUCTION

The Government has failed to prove by clear and convincing evidence that Gardenhire acted with reckless disregard for aircraft safety.  After creating the false impression that Gardenhire had been expressly warned about the risks of laser light on aircraft during the initial sentencing hearing, the Government now selectively cites law enforcement reports in a vain attempt to meet its heavy burden.  Based upon a full review of the record, however, it is clear that Gardenhire knew nothing of the potential risk, much less made a deliberate decision to ignore it.  Gardenhire had just borrowed the laser at the time, had never before pointed a laser at an aircraft until that night, and, despite providing a full confession, denied knowing anything about the potential danger.

Indeed, the Government cannot even establish that a reasonable person would have been aware of the possible risk to aircraft safety.  According to veteran helicopter pilot, Glendale Police Department Officer Michael Woolner, the negative impact from laser incidents arise, not simply from shining of the laser pointer but from the subsequent distortion of the light beam en route to and upon contact with the aircraft.  No average person - - - certainly not one as young and unsophisticated as Gardenhire - - - would be sufficiently familiar with laser physics to know that the beam becomes *larger* not smaller the further away the laser is pointed.  Nor could anyone be reasonably expected to know that the curvature from the cockpit glass refracts the light causing it to fill the entire cockpit.

Therefore, because the Government cannot show under the demanding clear-and-convincing standard that Gardenhire acted recklessly, the nine-level enhancement under U.S.S.G. 2A5.2(a)(2)(A) does not apply.  At most, Gardenhire's guideline sentencing range is zero to six months.  The Court should sentence him to no more than probation with community service.

## ARGUMENT

**THE RECKLESSNESS ENHANCEMENT DOES NOT APPLY TO GARDENHIRE'S CONDUCT**

**I. The Government Fails to Acknowledge its Heightened Evidentiary Burden of Proving that Gardenhire Acted Recklessly**

As an initial matter, the Government ignores its demanding burden of proof to demonstrate Gardenhire acted with reckless disregard.  The Ninth Circuit has held that, because the enhancement under U.S.S.G. § 2A5.2(a)(2)(A) doubles the base offense, the Government must prove recklessness by clear and convincing evidence.  *United States v. Gonzalez*, 492 F.3d 1031, 1039 (9th Cir. 2007)  ("we conclude that the heightened standard is appropriate here").  While the preponderance of the evidence standard is no doubt "a meaningful one," *United States v. Mezas de Jesus*, 217 F.3d 638, 643 (9th Cir. 2000), "the clear and convincing evidence standard is even more demanding and requires that the government 'prove [its] case to a higher probability than is required by the preponderance-of-the-evidence standard.'"  *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001) (quoting *California ex rel. Cooper v. Mitchell Bros. 'Santa Ana Theater*, 454 U.S. 90, 93 n.6, 70 L. Ed. 2d 262, 102 S. Ct. 172 (1981).  "Clear and convincing evidence creates a conviction that the factual contention is 'highly probable.'"  *United States v. Yi*, No. 11-50234, 2013 U.S. App. LEXIS 25 (9th Cir. Jan. 2, 2013) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984)).

//

//

//

//

//

3

**B.  The Government Presents Only a Partial Account By Selectively Citing From the Record**

Despite being afforded a second opportunity to prove recklessness, the Government has still failed to meet its burden.  Hoping to justify its dubious position, the Government glosses over critical facts.  Based a complete picture of the events in question, however, it is clear that the Government cannot show Gardenhire acted with reckless disregard for the safety of the aircraft.

To satisfy the heightened *mens rea* of recklessness, "(a) the defendant must be aware of the risk created by his conduct and (b) the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation."  U.S.S.G. § 2A1.4, app. note 1; *see United States v. Naghani*, 361 F.3d 1255, 1263 (9th Cir. 2004) (applying recklessness definition from Section 2A1.4 in the absence of a definition under 2A5.2).

First, the Government cannot show that Gardenhire was aware of the risk created by pointing the laser at aircraft.  As initial matter, the Government distorts the record by contending that Gardenhire shined the laser pointer "a mere 200 to 300 feet" from the first aircraft and suggesting that the helicopter was only 400 to 500 away by stressing only the altitude above ground.  *See* Government's Supplemental Sentencing Position at 6, 7.  To the contrary, both pilots confirmed that the laser source was much further away.  NetJet Pilot Aaron Puyana stated that the laser originated approximately "1/2 mile" or 2,640 feet from the aircraft.  Exhibit P (Laser Incident Questionnaire).  According to Pasadena Police Helicopter Mark Mendenhall, the laser incidents occurred from a distance of between one mile or three-quarter mile, or between 5280 or 3960 feet.  Exhibit O (Laser Beam Exposure Questionnaire).  Thus, even though Gardenhire knew that the laser was capable of hitting "objects

4

down the street and around the neighborhood," this cognition in no way demonstrates that he (or anyone else) would know that the laser would project several city blocks away.

While focusing on selective admissions from Gardenhire's statement to investigators, the Government discounts the most probative statement regarding Gardenhire's lack of knowledge. Gardenhire fully cooperated with law enforcement, including admitting his involvement, but denied being aware of the risks of shining the laser. As Gardenhire explained, "he didn't think about the dangers of what he was doing . . . [He] was just bored." Ex. B (Statement of Adam Gardenhire). There is nothing to indicate that Gardenhire's statement was merely a self-serving declaration. Gardenhire had already been arrested for pointing the laser and the officers in no way suggested that he would avoid criminal liability if he acted without knowledge of the risks. Indeed, the officers never inquired whether Gardenhire was aware and Gardenhire simply added this statement at the end of his confession. Given that Gardenhire was only eighteen years old and had never been subject to custodial interrogation before, not to mention the fact that he had never been accused of pointing a laser previously, there is nothing to suggest he independently knew that his lack of knowledge would be mitigating in a yet undetermined prosecution and sentencing.

Second, the Government has failed to establish that the average person would be aware of the risk to aircraft safety. In a recent interview, Glendale Police Department Pilot Michael Woolner[1] explained how the laser light undergoes two distinct and drastic changes before reaching the aircraft. *See* Exhibit Q (Report "Laser Strikes on Aircraft on Record Pace"). First, when the light travels at a distance

---

[1]Officer Woolner was one of the lead investigators in this case and testified on behalf of the prosecution during the suppression hearing.

of at least 500 feet - the distance of the two aircraft in this case - the beam expands from "the size of a pencil" to "12 inches in diameter."  Ex. Q.  Second, once the laser beam reaches the cockpit glass, "the beam is refracted" resulting in a "very bright, dazzling beam" that "illuminate[s]" the entire cockpit.  Woolner explains that impact is heightened at night because the officer's "eyes have adjusted to the dark conditions of night flight."  *Id.*  This technical, scientific information is certainly not within the common knowledge of the average reasonable person.  Thus, even assuming *arguendo* that someone could be expected to know that a laser pointed hundreds or even thousands of feet away is capable of reaching aircraft, it is simply unreasonable to assume they would also know that the laser would amplify as the distance increased and then explode into a cloud of light upon impacting the windshield.

### CONCLUSION

For the foregoing reasons, Gardenhire respectfully requests that the Court sentence him to no more than probation with community service.

DATED:   February 27, 2013                Respectfully submitted,

                                          SEAN K. KENNEDY
                                          Federal Public Defender

                                          By  */s/ Craig A. Harbaugh*
                                          CRAIG A. HARBAUGH
                                          Deputy Federal Public Defender

6