SEAN KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
CRAIG A. HARBAUGH (No. 194309)
Deputy Federal Public Defender
(E-mail: Craig_Harbaugh@fd.org)
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone (213) 894-7865
Facsimile (213) 894-0081

Attorneys for Defendant
ADAM GARDENHIRE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 12-345-SVW |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S SECOND |
| v. | ) | SUPPLEMENTAL SENTENCING |
| | ) | PLEADING; EXHIBITS |
| ADAM GARDENHIRE | ) | |
| | ) | Date: March 25, 2013 |
| Defendant. | ) | |
| | ) | Time: 10:30 a.m. |
| | ) | |

Defendant Adam Gardenhire, through his attorney of record, Deputy Federal Public Defender Craig A. Harbaugh, hereby submits his supplemental sentencing memorandum.

DATED:   March 25, 2013                    Respectfully submitted,

                                           SEAN K. KENNEDY
                                           Federal Public Defender

                                           By  /s/ Craig A. Harbaugh
                                           CRAIG A. HARBAUGH
                                           Deputy Federal Public Defender

**INTRODUCTION**

The sentencing determination, both as it relates to Adam Gardenhire's specifically, and the need for deterrence generally, turns on a single crucial question: whether the "misuse [is] due to ignorance or malfeasance."  FAA Pilot Safety Brochure: "Laser Hazards in Navigable Airspace."[1]  While the risks to aircraft safety from laser light have been grossly exaggerated, the general public is unaware of the strength and reach of what appears to be standard pointers.  In truth, laser manufacturers have flooded the consumers market with inexpensive pointers that exceed federal regulations.  The Food and Drug Administration, the agency charged with policing lasers, has done little to halt the sale of these illicit pointers or otherwise require adequate warnings to protect unsuspecting buyers.

There is no question that those offenders who intentionally target cockpits with the goal of jeopardizing aircraft safety should be punished harshly.  But for the vast majority of the public, including Gardenhire, a severe sentence would be disproportionate to the conduct.  Gardenhire had no idea that the deceptively ordinary laser he had borrowed from a friend was powerful enough to be seen by, much less distract, a pilot thousands of feet away.  Nor could Gardenhire have known that the tiny beam from his laser would expand to the size of a searchlight.  Under these circumstances, any period of incarceration, would be far greater than necessary to satisfy the sentencing goals in this case.  Indeed, sentencing Gardenhire to imprisonment would create a gross disparity with similarly situated defendants who have been sentenced in state and federal court.

Accordingly, a sentence of 2 years probation, a fine, and community service is be sufficient but not greater than necessary to satisfy the sentencing goals in this case.   To the extent the Court believes more is needed to deter others, education,

---

[1]Cited by the Court in its Minute Order dated February 28, 2013.

rather than punishment, would be the most effective and the most appropriate course. One possibility is to require Gardenhire to participate in a press conference in order to raise public awareness of both the risks to aircraft safety and the threat of criminal prosecution. *See United States v. Christopher Willingham*, 2:12-cr-00006-MSD-DEM-1 (E.D. Va. 2012) (sentenced to probation and $5,000 fine); Mike Hixenbaugh & Patrick Wilson, THE VIRGINIA-PILOT, *Beach Man Fined $5K for Shining Laser at Police Pilot* (May 19, 2012) available online at http://hamptonroads.com/2012/05/beach-man-fined-5k-shining-laser-police-pilot.

## ARGUMENT

### I. Gardenhire Did Not Act Recklessly When Shining the Laser

As discussed in prior defense submissions, the Government has failed to prove by clear and convincing evidence that Gardenhire acted with reckless disregard for aircraft safety. In addition to evidence previously submitted, Gardenhire offers the expert opinion of Samuel Goldwasser, who is known as the "laser guru" among his colleagues. See Christine Negroni, High-Powered Laser Pointers Pose Risk to Pilots, N.Y. Times, Jan. 21, 2011, http://www.nytimes.com/2011/01/22/us/22lasers.html?_r=0. First, Goldwasser confirms that "the general public and even well educated people are generally quite unaware of either the legal power, or the power of their lasers." Exhibit R (Expert Report) at 5. Goldwasser explains that hand-held lasers were traditionally limited to "Class 3a" laser beams, which had a maximum wattage of 5 milliWatt. More recently, illegal "higher power laser pointers (mostly Class 3b) are readily available on-line, on eBay, and from other mail order." *Id.* at 2. According to Goldwasser, the federal government has done little to protect the public from these illicit lasers:

> Enforcement appears to be nearly nonexistent. There are numerous suppliers of laser pointers and "hand-held" lasers, as well as other types of lasers that violate even the basic 5 mW limit. Occasionally, there will be an attempt to crack down on eBay sellers or surplus places but the

3

effects are short lived at best since there may be no real penalties.
*Id.* at 4.  Goldwasser is not alone in his criticism of the Food and Drug Administration.  Five months after the laser incident in this case, Senator Charles Schumer called on the Food and Drug Administration to overhaul the regulations governing the sale and strength of lasers and laser pointers.  Schumer Calls for Tighter Regulations on Use of Laser Pointers, N.Y. Daily News (Aug. 5, 2012) available online at  http://www.nydailynews.com/news/national /sen-schumer-calls-tighter-regulations-laser-pointers-article-1.112957 (writing to FDA that "[i]t is also my understanding that more powerful lasers, such as Class IIIb and Class IV lasers, have no purchase restrictions, other than a rule prohibiting them from being able to be sold as "pointers."  It's my strong belief that the FDA should implement some purchasing restrictions on Class IIIb and Class IV lasers, as they are currently easily available for purchase.").

Goldwasser's opinion also identifies circumstances in this case undermining the likelihood that Gardenhire knew of the risks resulting from the laser.  First, Goldwasser confirmed that the laser, which Gardenhire had unwittingly borrowed from a friend, exceeded the legal limit seven fold.  And as Goldwasser explained, this is not something that Gardenhire or anyone else would notice simply by viewing the laser:

> "The eye is a poor judge of the output power of a laser.  Without performing a side-by-side comparison, it would not be easy to reliably tell the difference between a 5 mW legal pointer and one that was 50 mW.  Ambient lighting and the eye's variable response make this impossible.  And even side-by-side the perceived difference won't be 10X but perhaps 2 or 3X."

Ex. R at 5.  In addition, Goldwasser confirmed that the laser would not have caused any injury at the distance projected in this case.

Finally, Goldwasser dispels the prosecution's reliance upon the fact that the laser struck the cockpits multiple times or that it appeared he was "tracking" the

4

aircraft:

> I do not consider multiple bursts and/or apparent tracking of the aircraft to be of much significance. Laser pointers and so-called "hand-held lasers" typically have a pushbutton to turn the beam on. So, multiple presses of the button are a natural way to use these, not something special. Tracking is also something that is a consequence of the desire to show an ability to keep the laser spot on the plane. But that isn't necessarily to cause harm but simply to prove they can do it. Holding a laser spot on something a mile away is a challenge. So, the appearance of multiple bursts could also simply be due to a wavering hand in directing a laser pointer at a moving plane a mile or more away.

Ex. R at 8. And this does not even account for the fact that Gardenhire's laser would have "diverged" or expanded extensively at the point it reached the aircraft thousands of feet away. At a minimum, the laser beam would have grown to almost five feet in diameter by reaching the cockpit. Ex. R. at 7 (noting that at one-half mile, the beam would have expanded to 4.75 feet in diameter).

**II. Most Similarly Situated Defendants Have Received Only Probation or a Nominal Sentence**

As reflected in the attached chart, most defendants previously charged in Los Angeles County have not been severely punished. When accounting for cases where the defendant had some matter unrelated to the laser incident (such as additional charges or prior probation), the sentence was usually limited to probation or a few days or months in jail. *See* Exhibit S.

<u>CONCLUSION</u>

For the foregoing reasons, Gardenhire respectfully requests that the Court sentence him to no more than probation with community service.

DATED:   March 21, 2013          Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

By  */s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH

5

1                                             Deputy Federal Public Defender

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28