UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | 2:12-cr-00345-SVW |
| Date | March 25, 2013 |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

Interpreter

| Paul M. Cruz | N/A | N/A |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Adam Gardenhire | Not | | x | Craig A. Harbaugh, DPFD | Not | | x |

**Proceedings:**  IN CHAMBERS ORDER re: Sentencing

**I.  INTRODUCTION AND BACKGROUND**

On March 29, 2012, Defendant Adam Gardenhire ("Defendant") was charged in a two-count indictment with aiming a laser pointer at an aircraft, in violation of 18 U.S.C. § 39A.[1]  The first count pertains to a laser strike on a small jet, while the second count pertains to a laser strike on a police helicopter.  On October 29, 2012, Defendant pleaded guilty to count one relating to the jet.

On December 21, 2012, the United States Probation Office ("USPO") issued a Pre-Sentence Investigation Report ("PSR") and a separate recommendation letter.  (Dkt. 39, 40).  Because a violation of 18 U.S.C. § 39A is a felony offense for which no guideline is expressly promulgated, the USPO referred to the most analogous guideline § 2A5.2, which governs "Interference with Flight Crew Member or Flight Attendant; Interference with Dispatch, Navigation, Operation, or Maintenance of Mass Transportation Vehicle."[2]  Additionally, because the USPO concluded that Defendant's offense involved recklessly endangering the safety of an aircraft, it recommended a base offense level of 18, pursuant to § 2A5.2(a)(2)(A).

On March 25, 2013, the Court sentenced Defendant to 30 months imprisonment, followed by 3 years of supervised release.  Although the Court outlined its reasons in open court, the Court takes this opportunity to elaborate on the factors that informed its decision.  In particular, the Court set forth its reasons for imposing the reckless endangerment enhancement, which increased Defendant's base offense level to 18.  In addition, the Court discusses the relevant sentencing factors pursuant to 18 U.S.C. § 3553(a).

//
//

---

[1]  Section 39A provides, in pertinent part, that "[w]hoever knowingly aims the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States, or at the flight path of such an aircraft, shall be fined under this title or imprisoned not more than 5 years, or both."

[2]  The parties did not genuinely dispute the USPO's application of § 2A5.2 as the analogous guideline.

| | : | |
|---|---|---|
| | Initials of Deputy Clerk | PMC |

cc:  USM
     PSA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**II.    DISCUSSION**

    **A.    Reckless Endangerment Enhancement**

As a threshold matter, in performing the Guidelines calculation, the Court concludes that a base offense level of 18 is appropriate on account of Defendant's reckless endangerment of the safety of an aircraft.

        **1.    Legal Standard**

For the enhancement to apply, the Government must prove by clear and convincing evidence that Defendant recklessly endangered the safety of the jet involved in Count One. United States v. Gonzalez, 492 F.3d 1031, 1039 (9th Cir. 2007) (applying "clear and convincing" standard to enhancement under section 2A5.2(a)(2)). To show recklessness, "(a) the defendant must be aware of the risk created by his conduct and (b) the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 app note 1; see United States v. Naghani, 361 F.3d 1255, 1263 (9th Cir. 2004) (applying recklessness definition from Section 2A1.4 in the absence of a definition under 2A5.2).

"Common sense tells us that a defendant can endanger something without causing actual harm." Gonzalez, 492 F.3d at 1035 (affirming reckless endangerment enhancement for defendant who yelled on plane that he had a bomb). "Courts have . . . consistently held that 'endangerment' means a threatened or potential harm and does not require proof of actual harm." Price v. United States Navy, 39 F.3d 1011, 1019 (9th Cir. 1994) (citation omitted). For example, in Naghani, 361 F.3d at 1263, the district court imposed the reckless endangerment enhancement where the defendant entered the aircraft lavatory, lit a cigarette to set off a smoke alarm, and when confronted, threatened to "kill all Americans." Id. at 1260. In upholding the enhancement, the Ninth Circuit reasoned as follows:

> The district court properly found that Naghani was aware of the risk created by his smoking, obstreperous behavior and threats, and that such conduct constituted a gross deviation from a standard of ordinary care. *Naghani should have been aware that his behavior would divert the flight attendants' attention from their duties and require their presence.* If an actual emergency had arisen at another part of the plane, the distraction would have delayed, and perhaps prevented, an effective response by the flight attendants.

Id. at 1263 (emphasis added).

        **2.    Application**

Similarly here, Defendant's act of pointing a laser at the jet created a risk of endangering the aircraft by diverting the pilot's attention away from landing the aircraft. As an initial matter, the record shows that Defendant's laser strikes were deliberate. According to the police reports, the reliability of which are undisputed, the pilot of the jet first noticed the green laser "on the right side of his face." He then observed the laser sweep over the aircraft "from left to right" (i.e., from the tail to the cockpit), at which point the laser struck him again, this time in his right eye. (Dkt. 49, Ex. B at 3, 5). At the time the beam struck the pilot's eye, the laser stayed with the moving plane for approximately one second. (Id., Ex. D at 15). Minutes later, Defendant again used the laser to strike a police helicopter six times while tracking the aircraft, with each strike lasting between three and ten seconds. (Id., Ex. B at 3). In other words, this was not a case of random and indiscriminate waving of a laser into the sky. Rather, it is plain that Defendant was acting knowingly with respect to both planes. Indeed, in his statement to the FBI, Defendant "stated that he tried intentionally to hit the aircraft." (Dkt. 23-3 at 2).

Further, Defendant reasonably knew or should have known that his laser strikes would distract the jet pilot and interfere with the pilot's operation of the aircraft, thereby endangering the aircraft. Cf. Naghani, 361 F.3d at 1263 ("Naghani should have been

|  | : |
|---|---|
| Initials of Deputy Clerk | PMC |

cc:  USM
     PSA

aware that his behavior would divert the flight attendants' attention from their duties and require their presence."). The Court rejects Defendant's contention that the Government has not shown that he was aware "that the laser would project several city blocks away." (Dkt 51 at 5). In his uncontroverted statement to the FBI, Defendant reported that "he hit the helicopter 'two to three times' and he hit the two different planes two times." (Dkt. 45, Ex. B at 20). Thus, the fact that the laser beam could travel such a distance was confirmed for Defendant as soon as he actually observed his laser strike the aircraft. His failure to cease after this initial contact demonstrates that he proceeded with disregard of the knowledge that the laser beam could reach the aircraft.[3]

Moreover, there is no question that Defendant in fact endangered the aircraft. The fact that the jet pilot observed the laser "sweep" along the plane is evidence that his attention was diverted momentarily to the laser, and away from landing the plane safely. In addition, the pilot later told the FBI that the laser was "pretty powerful" like a bright light at a rock concert, and that the beam "momentarily blinded" him. (Dkt. 49, Ex. C). Although these distractions fortunately did not result in any accident in this case, they certainly put the aircraft at risk of disaster. Based on the foregoing, the Court finds by clear and convincing evidence that Defendant recklessly endangered the jet and its pilots. Accordingly, the enhancement is appropriate.

Defendant's reliance on the proffered expert testimony of Dr. Samuel Goldwasser is misplaced. First, Goldwasser opines that "the general public and even well educated people are generally quite unaware of either the legal power, or the power of their lasers." (Dkt. 57, Ex. S at 5). He adds that "[t]he eye is a poor judge of the output power of a laser." (Id.). This fact, Defendant argues, undermines the likelihood that Defendant was aware of the risks of pointing the laser at aircraft. The Court disagrees. As already discussed, the fact that Defendant told the FBI how many times he hit each plane proves that he *could* see the laser hit the aircraft. Thus, Defendant cannot credibly claim that he remained unaware that the laser would reach the aircraft.

Second, Goldwasser attests that based on the circumstances in this case, "there is absolutely no possibility of the laser point on the ground causing injury to anyone in the aircraft." (Dkt. 57, Ex. S at 6). This is irrelevant, however, because the sentencing enhancement does not require that Defendant be aware of the risk of inflicting permanent injury. It only requires a showing that Defendant was aware of a risk of endangering the aircraft. For instance, distracting a pilot even temporarily creates a risk of interfering with his control of the aircraft, particularly during take off and landing. As stated above, Defendant should have known that his conduct would have created such a risk.

Third, Goldwasser attempts to minimize the risks of Defendant's behavior. Goldwasser opines that "[he] [does] not consider multiple bursts and/or apparent tracking of the aircraft to be of much significance." (Dkt. 57, Ex. S at 8). He states that multiple presses of the laser are a "natural" way to use the laser, but is not "special." (Id.). He further avers that tracking "is a consequence of the desire to show an ability to keep the laser spot on the plane," but that it "isn't necessarily to cause harm but simply to prove they can do it." (Id.). Last, Goldwasser surmises that "[a]s a practical matter, a pilot is not going to try to evade a beam of light and wild maneuvers would simply place the pilot at greater risk of losing control." (Id.).

These observations are unhelpful for several reasons. With respect to the tracking and serial bursts, Goldwasser's testimony about *why* people engage in these behaviors is inapposite. It makes no difference *why* Defendant was shining the laser. In fact, Defendant already told the FBI that he pointed the laser at the planes out of boredom. (Dkt. 45, Ex. B at 20). However, this does not

---

[3] The Court also rejects Defendant's contention that he was unaware that pointing the laser from such a far distance could temporarily blind the pilots. To begin with, circumstantial evidence points to the contrary conclusion. When Defendant obtained the laser pointer from his friend, the friend warned him "not to shine the laser at anyone's eyes because it would blind people." (Dkt. 45, Ex. B at 20). In any event, even accepting Defendant was ignorant of the risk of blindness, this does not imply that he was unaware of other ways in which his laser strikes could endanger the aircraft. "Common sense tells us that a defendant can endanger something without causing actual harm." Gonzalez, 492 F.3d at 1035. As discussed, Defendant knew or should have known, at a minimum, that his laser strikes would distract the pilots from the task of landing the jet and thereby endanger the aircraft.

|  | : |
|---|---|
| Initials of Deputy Clerk | PMC |

cc: USM
    PSA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

alter the Court's conclusion that Defendant was aware of the risks inherent in pointing the laser at the aircraft.[4]  With respect to Goldwasser's comment that a pilot would not try to evade a laser, Goldwasser is unqualified to speculate about how a pilot would respond to various types of laser strikes.  The Court therefore disregards this testimony.  In sum, Goldwasser's expert testimony is unavailing.  The enhancement therefore shall apply to increase Defendant's base offense level to 18.

    **B.**    **Sentence Imposed**

        **1.**    **Legal Standard**

The Court follows the guidance of the U.S. Supreme Court in crafting the sentence:

> As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, he may not presume that the Guidelines range is reasonable.  He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

Gall v. United States, 552 U.S. 38, 49-50 (2007).

        **2.**    **Guidelines**

The PSR recommends an initial offense level of 18, with a 3 level downward adjustment for acceptance of responsibility.  Defendant has one criminal history point.  These factors together place him in criminal history category I, which corresponds to the Guidelines Sentencing range of 18-24 months imprisonment.

The Government recommends the Court impose a sentence of 12 months imprisonment, followed by 2 years of supervised release, to reflect given Defendant's youth, lack of substantial criminal history, relatively quick acceptance of responsibility, and acceptance of responsibility.  (Dkt. 44 at 4).  For his part, Defendant contends that a sentence of 2 years probation, a fine, and community service will satisfy the sentencing factors.

For the reasons articulated below, the Court concludes that none of the foregoing sentences would be adequate when balancing the sentencing factors under 18 U.S.C. § 3553(a).

        **a.**    **Seriousness of the Offense**

The Court considers this to be a very serious crime.  Defendant's own expert testified on cross-examination that pointing a laser at a person's eyes can result in temporary blindness and after-effects.  Thus, pointing a laser at an aircraft runs the risk of

---

[4] Moreover, and in any event, there is no foundation for Goldwasser's personal knowledge of the general public's motivations in using lasers, much less Defendant's state of mind during the incident.

                                                                                                                                                                        :

                                                     Initials of Deputy Clerk          PMC

cc: USM
      PSA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

distracting or disabling the pilot(s), thereby jeopardizing the safety of the pilots and any passengers. This risk is magnified by the fact that most laser strikes occur at low altitudes, near take-off or landing, where there exists the most air traffic and greatest proximity to populated areas. (Dkt. 53, Ex. A at 6). In short, if a laser strike did result in a crash, the toll could be devastating. Therefore, the sentence imposed must reflect the gravity of this offense.

      **b.**      **Deterrence**

Deterrence figures prominently here. This case appears to be one of the first, if not the first, sentence imposed in the Central District for violation of the relatively new laser pointing statute, 18 U.S.C. § 39A. Additionally, the parties do not dispute that in recent years, Los Angeles International Airport has consistently led the nation in terms of the number of laser strikes, ranking first in 2010 and third in 2012. Other Southern California airports – Ontario, Burbank, and John Wayne – have not been far behind, ranking among the top 20 airports in laser strikes. (See, e.g., Gates Decl. ¶ 3). Moreover, the incidence of laser strikes nationwide has been rising dramatically in the past five years. According to the Federal Aviation Administration, the number of laser strikes nationally has risen from nearly 300 in 2005 to 1,527 in 2009; 2,836 in 2010; and 3,592 incidents in 2011.[5] Where, as here, the sentence imposed relates to a new statute enacted to curb widespread and dangerous misconduct, and where these crimes have become especially prevalent in this particular federal district, the Court's concern for the sentence imposed to afford adequate deterrence is at its maximum.

      **c.**      **Promote Respect for the Law**

In addition, the Court notes that there is a strong need for the sentence imposed to promote respect for the law. As already noted, the past few years have seen a steep increase in the number of laser incidents, with Southern Californian airports consistently among the top airports reporting such incidents. Moreover, the Government has apprised the Court that only two federal prosecutions have been brought in the Central District for laser strikes. (Dkt. 53). In view of the foregoing, it would appear that the public's respect for the law against pointing lasers at aircraft is not firmly established at this time. Accordingly, it is necessary for the sentence imposed to reinforce this factor.

      **d.**      **Defendant's History and Characteristics**

At the same time, the Court has considered Defendant's youth and criminal history. While Defendant's record is not unblemished, nor is it sufficiently extensive to warrant, standing alone, the sentence the Court imposes. In other words, if the Court were crafting the sentence solely based on Defendant's age and history, it likely would impose a lesser sentence. However, the Court finds that, under the circumstances of this case, the public's strong interest in deterrence and respect for the law decisively outweigh Defendant's personal attributes.

      **e.**      **Remaining Factors**

The remaining § 3553(a)(2) factors do not weigh heavily in the Court's determination. Given the nature of the Court's sentence, it doubts that the public will require protection from further crimes of this defendant. 18 U.S.C. § 3553(a)(2)(C). Nor is this the type of case where Defendant would benefit from correctional treatment. 18 U.S.C. § 3553(a)(2)(D).

The Court has also considered the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6). As this case is among the first to be prosecuted under 18 U.S.C. § 39A, there is little basis for comparison. However, the Government has informed

---

[5] See Press Release, FAA, "FAA Steps Up Enforcement of Laser Penalties"(May 16, 2012), available at: http://www.faa.gov/news/press_releases/news_story.cfm?newsId=13555; Press Release, FAA, "FAA Announces Record Number of Laser Events in 2010" (January 19, 2011), available at: http://www.faa.gov/news/press_releases/news_story.cfm?newsId=12298.

|  | : |
|---|---|
| Initials of Deputy Clerk | PMC |

cc: USM
    PSA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

the Court of two previous sentences based on violations of the statute for interference with operation of an aircraft, 18 U.S.C. § 32(a)(5).[6] In United States v. Wells, No. 5:10-cr-0006-VAP (C.D. Cal. Oct. 25, 2010 (Dkt. 48)), the defendant pleaded guilty to one count of violating § 32(a)(5) for pointing a laser at an aircraft, and the court sentenced him to 15 months imprisonment, followed by 3 years of supervised release. In United States v. Welch, No. 8:08-cr-00175-RT-1 (C.D. Cal. Dec. 15, 2009 (Dkt. 140)), the defendant was convicted of two counts of violating § 32(a)(5) for pointing a laser at multiple aircraft, and the court sentenced her to 30 months imprisonment on each count to be served concurrently, followed by three years of supervised release.

As an initial observation, the Court does not find these sentences directly on point because they were imposed pursuant to a statute with different elements than 18 U.S.C. § 39A. While these sentences are not a perfect fit, they are somewhat analogous at least inasmuch as the interference in each case involved the use of a laser pointer. To the extent the cases are comparable in this respect, the Court finds that its sentence of 30 months is not significantly different from that in Welch, as both courts have imposed a sentence of 30 months for each count of conviction.

### III. CONCLUSION

In sum, under these circumstances, the Court finds that the Guidelines range of 18-24 months is inadequate to fulfill the need for deterrence and to promote respect for the law. The Court believes that a six month upward departure to 30 months is justified in light of the seriousness of the offense and the urgent need for deterrence against future laser strikes amid the growing prevalence of such strikes nationwide and in this judicial district in particular, as well as the inherently dangerous potential consequences of these crimes.[7] Accordingly, the Court concludes that a sentence of 30 months imprisonment, followed by 3 years of supervised release, shall be sufficient, but not greater than necessary, to comply with the § 3553 factors and the Sentencing Reform Act of 1984.

---

[6] Section 32(a)(5) makes it a crime for a person to "willfully . . . interfere[] with or disable[], with intent to endanger the safety of an person or with a reckless disregard for the safety of human life, anyone engaged in the authorized operation of such aircraft or any air navigation facility aiding in the navigation of any such aircraft."

[7] In its February 28, 2013 minute order, the Court informed the parties it was contemplating the possibility of an upward departure from the guidelines range, with particular focus on the role of deterrence. Fed. R. Crim. P. 32(h). In addition, pursuant to Fed. R. Crim. P. 32(i), the Court informed parties it was considering relying on certain publicly available sources beyond the record, listed those sources for the parties, and invited supplemental briefing on these topics. (Dkt. 52). The parties subsequently filed supplemental briefs, which the Court has considered in imposing this sentence. (Dkt. 53, 57, 58).

|  | : |
| --- | --- |
| Initials of Deputy Clerk | PMC |

cc: USM
    PSA