SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail:  Sean_Kennedy@fd.org)
CRAIG A. HARBAUGH (No. 194309)
Deputy Federal Public Defender
(E-mail: Craig_Harbaugh@fd.org)
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone (213) 894-7865
Facsimile (213) 894-0081

Attorney for Defendant
ADAM GARDENHIRE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 12-345-SVW |
| Plaintiff, | DEFENDANT'S NOTICE OF MOTION AND MOTION SEEKING BAIL PENDING APPEAL |
| v. | |
| ADAM GARDENHIRE, | Date:  April 24, 2013 |
| Defendant. | Time:  11:00 a.m. |

TO:   UNITED STATES ATTORNEY ANDRÉ BIROTTE, JR., AND ASSISTANT UNITED STATES ATTORNEY:

Adam Gardenhire, by and through his attorney of  record, Deputy Federal Public  Defender Craigh Harbaugh, hereby gives notice of motion and motion for bail pending appeal.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: April 3, 2013          By        /s/
                                    CRAIG HARBAUGH
                                    Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Adam Gardenhire satisfies all of the requirements for bail and there is no reason to imprison him while he pursues his appeal.  To be sure, Gardenhire need not demonstrate "exceptional reasons" justifying his release.[1]  Nor must he establish that he will succeed or even that he will likely prevail.  Instead, Gardenhire need only demonstrate that he raises significant legal questions that are not clearly addressed by precedent.  Gardenhire raises three such issues.  First, Gardenhire will appeal the determination of whether he was in custody, and, thus, whether *Miranda* warnings were required.  Second, Gardenhire intends to challenge the determination that the police obtained valid consent to search from Gardenhire's aunt by circumventing his anticipated objection.  Finally, Gardenhire intends to challenge the calculation of the guidelines to his offense, particularly the recklessness enhancement, which appears to be the first case of its kind.  Because success on any of these issues would result in either reversal of his conviction or a reduction in his sentence, bail pending appeal is appropriate.

## ARGUMENT

## MR. GARDENHIRE MEETS THE REQUIREMENTS FOR BAIL PENDING APPEAL

A defendant who has been convicted and sentenced to confinement is entitled to release pending appeal provided:  (1) "that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," (2) "that the appeal is not for the purpose of delay," and (3) "that the appeal raises a substantial question of law or fact likely to result in–(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b).

---

[1] 18 U.S.C. § 3145(c)

## I.      Gardenhire Is Neither a Flight Risk Nor Danger To the Community

Gardenhire neither poses a danger to the community nor a risk of flight. Born in Glendale, California, Gardenhire has resided in Southern California his entire life. PSR ¶¶ 43, 49.  Furthermore, Gardenhire maintains a close relationship with his mother, maternal grandparents, and his "father-figure" uncle, all of whom reside in Southern California.  PSR ¶¶ 44, 47.  Specifically, from birth until age 14, and from late August 2012 until the present, he has resided in Sun Valley, California with his immediate family, in a home that his mother owns.  PSR ¶ 49.

Since 2010, Gardenhire has been enrolled at Birmingham Community Charter High School in Van Nuys, California and expects to receive his high school diploma in 2013. PSR ¶ 57.  Gardenhire has never engaged in violent criminal activity, represented by the fact that he has no violent criminal history. PSR ¶ 37.  As part of the terms of his Pretrial Services Agency supervision, Gardenhire is tested randomly for drug use; he has passed all tests with the exception of one.  PSR ¶ 56.

Since high school and until October 2012, Mr. Gardenhire has consistently been employed.  His employment has entailed volunteering at a hospital, being employed through the Child Resource Care Center, and working full time as a carpet installer.  PSR ¶¶ 60-62.  Gardenhire's relationship with his family, his dedication to completing his high school degree from Birmingham Community Charter High School, compliance with Pretrial Services, negative drug tests, history of employment in the area and current diligence in seeking new employment all evidence a commitment to Gardenhire's permanency in Southern California, further supporting the conclusion that he is neither a risk of flight, nor a danger to the community.

## II.     Mr. Gardenhire's Appeal Is Not Taken for the Purpose of Delay

Gardenhire's appeal is not taken for the purpose of delay.  As set forth below, Gardenhire intends to raise compelling issues which, if successful, would result in full reversal (following the withdrawal of his guilty plea) or reduction of his sentence either to no confinement or below the time necessary for the

1  appellate process to run its course.  Even if Gardenhire only obtained relief on his

2  sentencing argument, bail is necessary to avoid him serving any unnecessary time

3  in custody.  If the Ninth Circuit concludes that the Court misapplied the

4  recklessness enhancement, the applicable guideline range would be reduced from

5  18 to 24 months to zero to 6 months.  Last year, the median time interval from

6  filing of a notice of appeal to final disposition of a case was 17.4 months, which

7  is almost three times the high-end of the adjusted guideline range.  United States

8  Courts for the Ninth Circuit, 2011 Annual Report, available online at

9  http://www.ce9.uscourts.gov/publications/AnnualReport2011.pdf (last visited on

10  April 3, 2013).

11  **III.    Gardenhire's Appeal Raises Substantial Questions Of Law That, If**

12  **Determined Favorably To Gardenhire, Are Likely To Result In A**

13  **Reversal Or Reduced Sentence**

14         The final requirement for obtaining bail pending appeal entails two

15  interrelated but distinct prongs:  (1) "a substantial question of law or fact" that is (2)

16  "likely to result in . . . reversal [or] reduced sentence."  18 U.S.C. § 3143(b).  To

17  satisfy the substantial-question prong, the defendant need only demonstrate that the

18  issue is "fairly debatable," or "fairly doubtful."  *United States v. Handy*, 761 F.2d

19  1279, 1283 (9th Cir. 1985) (internal citations omitted).  While the defendant must

20  do more than demonstrate that the claim is "not frivolous,"  *United States v. Handy*,

21  761 F.2d 1279, 1282 n.2 (9th Cir. 1985), he need not show that reversal is "more

22  likely than not" or even that it is a "close question."  *Id.* at 1281, 1282 n.2.  Rather,

23  it is enough to demonstrate that the issue is "novel" or "not readily answerable," or

24  simply "present[s] unique facts not plainly covered by the controlling precedents."

25  *Id.*  In making this determination, the district court need not find --- indeed, it

26  should not even consider whether --- its own ruling was wrongly decided.  *Id.* at

27  1281 (concluding "requiring the district court to certify that it believes its ruling to

28  be erroneous . . . would make a mockery of the requirement . . . . that the application

4

1   for bail be made in the first instance in the district court").

2         The second prong addresses the impact of any appellate determination.  As

3   long as a favorable resolution of the issue would result in reversal of the defendant's

4   conviction or reduction of the defendant's sentence, the second prong is met.

5              **A.  Gardenhire's Motion to Suppress His Confession Raises a**

6                        **Substantial Question**

7         The Ninth Circuit has identified several factors that are relevant to whether

8   the circumstances of defendant's interrogation "effected a police-dominated

9   atmosphere," thus, triggering the obligation to issue *Miranda* warnings under the

10  Fifth Amendment. *United States v. Craighead*, 539 F.3d 1073, 1084 (9th Cir. 2008).

11  Generally, *Craighead* holds that, "a suspect is... considered 'in custody' for

12  purposes of *Miranda* if the suspect has been 'deprived of his freedom of action' in

13  any significant way." *Craighead,* 539 F.3d at 1082.  It is uncontested that

14  Gardenhire was standing in his front yard at the time of each interrogation.

15  (Transcript of Evidentiary Hearing September 9, 2012 at 56:12). When coupled with

16  the presence of a helicopter overhead, shining its light on Gardenhire, the fact that

17  he was in "familiar surroundings" serves much less value. (Hearing Tr. at 21:3; 70:

18  15-17; 71:17, 19).  Certainly, case precedent has remained silent on such a unique,

19  significant circumstance.

20        Also to date, the Ninth Circuit has not applied the *Craighead* factors to

21  circumstances in which the defendant is nearly a minor.  Gardenhire was just 18

22  when he was questioned by Officer Woolner in his front yard, a factor that is

23  absolutely important in determining the reasonable belief of his freedom to leave.

24  Under the totality of circumstances test, it is certainly debatable whethr a reasonable

25  person–a reasonable 18 year old–would believe himself to be in custody while in the

26  presence of five uniformed, armed law enforcement officers. (Hearing Tr. at 6:9).

27  Because the presence of a helicopter, coupled with Gardenhire's young age poses

28  unique facts not previously presented to the Ninth Circuit, Gardenhire's motion

1   presents a substantial question of law to be one that is "fairly debatable."

2   Even without considering the uniqueness of the circumstances, it is simply

3   possible that the Ninth Circuit will weigh the factors differently and reach a

4   different result.  The determination of whether a person is in custody for purposes

5   interrogation is a question of law reviewed *de novo*.  *United States v. Crawford*, 372

6   F.3d 1048, 1053 (9th Cir. 2004).  Indeed, another district court found that merely

7   because the appellate court will be required to "conduct its own balancing of the

8   various factors" under *Craighead* and "it is entirely possible that the Ninth Circuit

9   will reach a different conclusion," that the issue raised a substantial question.

10  *United States v. Winsor*, 890 F. Supp. 2d 1257 (D. Or. 2012).

11  Finally, it is not entirely clear that *Craighead* controls resolution of the issue.

12  The Ninth Circuit has made clear that the *Craighead* factors are not exhaustive or

13  exclusive.  *Id*. at 1082.  In fact, several Ninth Circuit decisions since have not even

14  applied the *Craighead* factors to un-*Mirandized* home interrogations.  *See United*

15  *States v. Redlightning*, 624 F.3d 1090, 1103-04 (9th Cir. 2010); *United States v.*

16  *Brobst,* 558 F.3d 982, 995-96 (9th Cir. 2009).

17  **B.  Gardenhire's Aunt's Consent to Search**

18  Substantial questions can also involve "important questions concerning the

19  scope and meaning of decisions of the Supreme Court."  *Handy*, 761 F.2d 1279,

20  1281 (9th Cir. 1985) (quoting *D'Aquino v. United States*, 180 F.2d 271, 272 (9th

21  Cir. 1950).  Gardenhire challenges the officer's search based upon his aunt's

22  consent.  Because this argument addresses the proper scope of the Supreme Court's

23  seminal decision in *Georgia v. Randolph,* 57 U.S. 103 (2006), it too raises a

24  substantial question.

25  In *Randolph*, the Supreme Court held that an occupant's consent to the

26  warrantless search of a residence is invalid when "the police have removed the

27  potentially objecting tenant from the entrance (of the residence) for the sake of

28  avoiding a possible objection."  *Georgia v. Randolph,* 57 U.S. 103, 121-122 (2006).

6

Pursuant to *Randolph*, there is, generally, no clear, articulable standard utilized by the Ninth Circuit in determining what constitutes the removal of an anticipated objector. Although the Ninth Circuit has applied this exception under *Randolph*, it has never addressed the unique circumstances of this case.

*United States v. Brown,* 563 F.3d 410, 413 (9th Cir. 2009) is inapposite. There, the Ninth Circuit held that a co-occupant's consent to search the defendant's home was valid because police had arrested the defendant pursuant to a valid arrest warrant and placed him in a squad car prior to consent and discussion with the co-occupant. In contrast, none of the five law enforcement officers at Gardenhire's home were effectuating a warrant and Gardenhire was placed under arrest after he confessed, not before interrogation. (Hearing Tr. at 62:8-9). In Gardenhire's case, Officer Woolner questioned him in his front yard for about four minutes, not in a squad car or confined area. (Hearing Tr. at 57:10). Like the defendant in *Brown,* at no point did Officer Woolner ask Gardenhire for consent to search his home. *Id.* Sergeant Davenport entered into the house with Gardenhire's aunt, who was approximately ten feet away from Gardenhire, and outside of earshot. (Hearing Tr. at 22:8-14; 45:12-15). However, unlike the defendant in *Brown*, where the co-occupant was found to have "spontaneously volunteered" consented to the Officer without any prompting, *Brown,* 563 F.3d at 13, Sergeant Davenport specifically asked Gardenhire's aunt if he could go inside and "see if there was a laser there." (Hearing Tr. at 14:22).

Further, the Ninth Circuit extended the *Randolph* rule to situations where the defendant objects to a search, his co-tenant is unaware of this objection and consents, and the officer proceeds with the search based on the co-tenant's consent. *United States v. Murphy,* 516 F.3d 1117, 1125 (9th Cir. 2008). Again, such is not the case for Gardenhire. The government argued that consent of Gardenhire's aunt was valid because Gardenhire watched his aunt and Sergeant Davenport enter the home and did not object to the search. (Hearing Tr. at 58:8-9).

1  Based on these distinct set of facts, neither *Randolph* nor Ninth Circuit

2  decisions interpreting this precedent, provide a clear answer for this case.  Thus,

3  whether Gardenhire's aunt's consent to have Sergeant Davenport search their home

4  constitutes is valid poses a substantial question of law that is "fairly debatable."

5  **C.  The Applicability of the Sentencing Guideline Recklessness**

6  **Enhancement**

7  The applicability of the recklessness enhancement pursuant to U.S.S.G. §

8  2A5.2(a)(2)(A) to Mr. Gardenhire's sentencing calculation also constitutes a

9  substantial question.  *Id.*  Given the recent passage of the laser-pointer statute, no

10  appellate court (and apparently no district court), has applied the sentencing

11  guidelines to this particular offense.  Indeed, the United States Sentencing

12  Commission has not even identified which sentencing guideline applies.  Because

13  the issue is new and novel, it undoubtedly poses a substantial question for appellate

14  review.

15  As an initial matter, neither § 2A5.2 nor its reckless enhancement has been

16  interpreted in the context of a conviction under 18 U.S.C. § 39A (2013) .  Despite

17  the passage of the statute in February 2012, the United States Sentencing

18  Commission did not take the opportunity to identify which guideline governed 39A

19  convictions during last year's amendment process.  This case appears to mark the

20  first instance that the sentencing guidelines, as well as the reckless enhancement has

21  been endangering the safety of an aircraft, § 2A5.2(a)(2), have been applied to the

22  aiming of a laser pointer beam at an aircraft based upon a conviction under 39A.  Of

23  the known cases involving a 39A charge, only one has been sentenced.  In that case,

24  the district court judge made no findings on the record regarding the sentence

25  calculation and imposed only a probationary sentence contingent upon the payment

26  of a fine.  *United States v. Glenn Stephen Hansen*, 12-cr-00096-GKS-KRS-1 (M.D.

27  Fla. 2012).   Three other defendants have been convicted but none have been

28  sentenced yet.  *United States v. Angel Rivas*, No. 2:13-mj-00035-ETB-1 (E.D.

8

N.Y.); *United v. Kenneth Santo Domingo*, No. 3:13-cr-00069-O (N.D. Tx); *United States v. Michael Brandon Smith*, No. 4:12-cr-00225-JCH-1 (E.D. Mo.).

Although the Ninth Circuit has previously applied the recklessness enhancement, it has never done so to activity outside of the aircraft.  For example, in *United States v. Gonzalez*, 492 F.3d 1031 (9th Cir. 2007), the Ninth Circuit applied Section 2A5.2(a)(2) to the defendant's disruptive conduct and threats while aboard a flight.  *Id.* at 1032-34 (concluding enhancement appropriate on plain error review where defendant told the flight attendants he need the plane to land, opened overhead bins, attempted to take out luggage, struggled with flight attendants and passengers, kicked flight attendants and passengers, and said that he had a bomb).  Similarly, in *United States v. Naghani,* 361 F.3d 1255, 1260 (9th Cir. 2004), the Ninth Circuit found the district court did not err in finding recklessness where the defendant set off a lavatory smoke alarm, argued with a flight attendant and threatened to "kill all Americans*." Id.*

It is entirely possible that the Ninth Circuit will reach a contrary conclusion than this Court.  The Ninth reviews the district court's interpretation and application of the Sentencing Guidelines *de novo*.  *United States v. Garcia,* 497 F.3d 964, 969 (9th Cir. 2007); *United States v. Rivera,* 527 F.3d 891, 908 (9th Cir. 2008).  Consequently, because this case presents a case of first impression, it raises a substantial question for review.

> **D.      If Successful, Relief on Any of the Issues Would Result in Reversal or Reduced Sentence.**

Although Gardenhire ultimately pled guilty, he specifically preserved two suppression challenges by entering a conditional plea.  If the Ninth Circuit reverses on either issue, Gardenhire will be allowed to withdraw his guilty plea and proceed to trial.  The exclusion of either his confession or the laser pointer or both from trial would undoubtedly impact the Government's ability to secure a conviction.  *See*, *e.g., United States v. Winsor, 890 F. Supp. 2d 1257* (D. Or. 2012) (concluding that

1   substantial questions raised from defendant's motions to suppress statements and

2   evidence were independently likely to result in reversal because defendant entered a

3   conditional guilty plea).

4          By the same token, Gardenhire's sentence is also likely to be significantly

5   reduced if the Ninth Circuit reverses the sentence calculation.  Miscalculation of the

6   guidelines range qualifies as procedural error warranting reversal.  *United States v.*

7   *Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).  Because Gardenhire's

8   applicable guideline range would be reduced three-fold, reversal by the Ninth

9   Circuit would undoubtedly impact his sentence.

10

11                                          **CONCLUSION**

12          For the foregoing reasons, Gardenhire respectfully requests that the Court

13   allow him to remain released on his current bond pending appeal of his conviction.

14
15                                     Respectfully submitted,

16                                     SEAN K. KENNEDY
                                       Federal Public Defender

17
18   DATED: April 3, 2013            By_____/s/ *Craig A. Harbaugh*_____
                                       CRAIG A. HARBAUGH
19                                     Deputy Federal Public Defender

20

21

22

23

24

25

26

27

28

                                            10